**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOHN SCHWALM,** ) | **CASE NO.  1:08 CV 01451** |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Judge Christopher A. Boyko** |
| ) | |
| **GUARDIAN LIFE INS. CO. OF** ) | |
| **AMERICA,** ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OF OPINION** |

On June 16, 2008, John Schwalm, Plaintiff, filed a Complaint in the above-captioned case against Guardian Life Insurance Company of America ("Guardian").  Pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), Plaintiff alleges wrongful termination of long-term disability ("LTD") benefits.  (ECF No. 1.) On January 30, 2009, the parties filed Cross-Motions for Judgment on the Administrative Record.  (ECF Nos. 18, 19.)  On March 2, 2009, the parties filed Briefs in Opposition.  (ECF Nos. 20, 21.)  For the following reasons, the Court grants Defendant's Motion and denies Plaintiff's Motion.

**I.  FACTUAL BACKGROUND**

**A. Procedural Record**

John Schwalm is a resident of Parma, Ohio and served as Chief Administrative Officer of Acero, Inc. ("Acero") until November 1, 2002. As an employee of Acero, Schwalm was a covered participant in the Guardian LTD Policy ("Policy"). The Policy is an ERISA-governed benefit plan as defined in 29 U.S.C. § 1002.

Due to a serious back injury and resulting complications, Schwalm began receiving disability payments on March 13, 2003. On September 11, 2007, Guardian discontinued payments, having determined that Schwalm was no longer "disabled" under the Policy. Guardian denied Schwalm's second appeal on June 12, 2008. Plaintiff seeks resumption of benefits under the Policy, including back pay and interest and alleges he has exhausted all administrative remedies.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

**B. The Policy**

The parties agree that Schwalm was a covered participant in Guardian's LTD Policy. However, the parties dispute whether Schwalm was "disabled" as of September 2007. Under the Policy, a claimant is "disabled" if "physical, mental or emotional limits caused by a current sickness or injury" render him "[un]able to perform the major duties of [his] own occupation or any gainful work." (AR 492.) The Policy defines "gainful work" as follows: "Work for which you are, or may become, qualified by: (a) training; (b) education; or (c) experience. Such work must be consistent with the level of your insured earnings." (AR 493.)

**C. The Medical Evidence**

Plaintiff suffered a back injury while lifting luggage in 1999 and sought multiple treatment options.  On December 5, 2002, Schwalm underwent spinal fusion surgery.  After attempting to work part-time, Schwalm filed for LTD based on post-laminectomy syndrome and degenerative disc disease.  Guardian provided monthly disability payments to Plaintiff of $7,000 between March 13, 2003 and September 11, 2007.

Dr. Michael Harris conducted an Independent Medical Examination (IME) on May 17, 2005.  Dr. Harris deemed Schwalm disabled, noting "pain and effects of medication also are a drain and would interfere with some functioning."  (AR 727.)  After watching surveillance video of Schwalm performing various functions, Dr. Harris's opinion remained substantially unchanged as of July 2005.  However, Dr. Harris found that Schwalm could "easily work at a sedentary level doing some type of management job."  (AR 689.)

In June 2005, the Social Security Administration (SSA) denied Schwalm disability benefits.  Schwalm appealed and was again denied on September 11, 2006.  The SSA denial letter stated that "despite the side effects of your medication, you are not significantly limited in your ability to get along with others, understand or follow directions, or cope with stress."  (AR 2006.)

Between February of 2005 and December of 2007, Dr. Edward Covington, head of the Chronic Pain Department at the Cleveland Clinic, served as Plaintiff's sole treating physician.  (AR 627.)  According to Dr. Covington's records from 2006, Schwalm was working significant hours for a start-up partnership named Peritus Technologies ("Peritus"), as part of a vocational rehabilitation program.  According to the Peritus Cooperation Agreement, Schwalm was "responsible for all executive management and financing functions including business planning,

3

bookkeeping, governance, legal administration, marketing and all other non-Business Development functions." (AR 1064.)  The Cooperation Agreement states: "Schwalm will put forth a minimum of 160 hours of effort . . . during each and every month.  Normal business hours for Schwalm will be 6:00AM until 6:00PM, Monday through Friday, which allows for four hours of rest and rehabilitation activities each work day." (AR 1065.)

On November 26, 2006, Guardian enlisted HealthSouth to conduct a functional capacity evaluation (FCE).  After extensive testing, HealthSouth found Schwalm capable of performing "at a light physical demand level for a typical 8 hour day." (AR 1970.)  On April 18, 2007, Schwalm's treating physician, Dr. Covington, found the FCE "reasonably correct." (AR 1936.)

On February 26, 2007, Defendant arranged for a vocational assessment by the Sierra Group, which found no evidence of cognitive impairment and deemed Schwalm able to "maintain an 8-12 hour day, at least five days per week." (AR 1904-05.)

Based upon the medical opinions, functional capacity evaluations, and vocational assessments, Guardian concluded that Schwalm could perform the major duties of his own occupation.  On September 11, 2007, Guardian notified Schwalm that his benefits were being discontinued.

On September 21, 2007, Schwalm appealed, submitting e-mails and letters describing his medications, pain and side effects.  Guardian's medical specialist found the information on appeal "largely subjective," noting Schwalm had not received diagnostic testing since 2004.  Dr. Covington's updated office visit notes indicated Schwalm continued to work at Peritus, but often rested throughout the day.

On March 13, 2008, Plaintiff sought a vocational assessment conducted by rehabilitation

4

consultant Kathleen Reis of Allwork, Inc. Upon review of the records, Ms. Reis emphasized that HealthSouth's FCE lacked any assessment of Schwalm's cognitive impairment. (AR 27.) Reis acknowledged, however, that "the physical capacities measured by the FCE are more than sufficient to perform the physical demands of the job of Chief Executive Officer." (AR 31.) Ms. Reis catalogued Plaintiff's medications and potential side effects and concluded that "Mr. Schwalm has lost the ability to earn a living due to the lingering effects of injury, pain, and medication side effects." (AR 31.) Reviewing Schwalm's appeal, Guardian noted that Ms. Reis's assessment not only contradicted the opinion of Schwalm's treating physician, Dr. Covington, but also Ms. Reis was not a medical professional and conducted no independent testing.

As part of the appeal process, Schwalm provided Guardian with medical records from a January 31, 2008 visit to Dr. Nagy Mekhail's office. Dr. Mekhail confirmed the post-laminectomy diagnosis, noted deterioration of Schwalm's condition, and recommended various procedures for relieving pain. Dr. Mekhail did not specifically address whether Schwalm was disabled. The office visit occurred more than four months after Schwalm's benefits were terminated.

On June 12, 2008, Guardian denied Schwalm's appeal, finding "no medical evidence supporting his disability beyond September 12, 2007." (AR 2015.) Furthermore, Guardian found no evidence of objective testing to confirm any cognitive impairment and determined that there was no medical evidence of a disabling condition that would prevent Plaintiff from gainful employment. (AR 2021.)

## II. LAW AND ANALYSIS

5

**A.  Standard of Review**

This Court applies the arbitrary and capricious standard of review where a policy cloaks the plan administrator with the discretionary authority to determine eligibility and construe the terms of a policy.  *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009)  (citing *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989)).  The arbitrary and capricious standard is the most deferential form of judicial review.  *Admin. Comm. of Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999).  The administrator's decision should be upheld if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence."  *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd*, 128 S. Ct. 2343 (2008).  The Court must consider several factors, including the quality and quantity of medical evidence and the policy administrator's consideration of the Social Security Administration's determination.  *Glenn*, 461 F.3d at 666.  A possible conflict of interest due to the administrator's dual role is "but one factor among many that a reviewing judge must take into account."  *Glenn*, 128 S. Ct. at 2351.  Ultimately, the Court must determine whether the plan administrator's decision was rational.  *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005).

**B.  The Discretionary Authority Vested in Defendant Under the Policy**

The parties do not dispute that the Policy grants Guardian discretionary authority to interpret, administer, and render decisions.  According to the express language of the Policy, Guardian maintains "discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims."  (AR 499, 586.)  Thus, the Court finds that the arbitrary and capricious standard of review is proper and proceeds to the merits of Plaintiff's

6

claims accordingly.

## C.  Basis for Discontinuing Benefits

Plaintiff contends Defendant discontinued benefits arbitrarily and capriciously.  Under the Policy, a claimant is no longer disabled if he can perform the major duties of his own occupation or any other gainful employment.  (AR 492.)  According to Guardian's assessment, Plaintiff's condition no longer prevented him from performing his own occupation.

Schwalm's management-level position as Chief Administrative Officer of Acero, Inc. was classified as sedentary.  (AR 1970.)  In an average work day, Schwalm was seated for approximately seven hours.  (AR 940.)  The FCE concluded that Plaintiff could perform sedentary work and even "light work," a more demanding category.  (AR 1970.)  Plaintiff could "at minimum . . . perform at a light physical demand level for a typical 8 hour day."  (AR 1970.)  Dr. Covington, Schwalm's treating physician, found the FCE "reasonably correct."  According to Dr. Covington, "[HealthSouth] certified him as fit to function at the light level of physical capacity given the fact that he works many hours a day but spend [sic] much of it lying down because of intractable pain.  This seems a reasonably appropriate determination."  (AR 1936.)  In addition, the vocational assessment performed at the direction of Guardian confirmed that Schwalm could perform an 8-hour work day at a light physical demand level.  Furthermore, the Social Security Administration denied Schwalm benefits, finding his condition not severe enough to prevent work.  While the Court notes the difference in the SSA standard and the Policy standard for "disabled," the plan administrator's consideration of the Social Security Administration's determination is a factor this Court must take into account.  *Glenn*, 461 F.3d at 666.  The Social Security Administration's decision "is far from meaningless."  *DeLisle*, 558

F.3d at 446.  Ultimately, the last IME that found Schwalm disabled occurred more than two years before his disability benefits were discontinued.

Schwalm raises several arguments in response.  First, Plaintiff argues Guardian failed to consider cognitive impairment, including side effects from medication and pain.  Second, Plaintiff asserts Defendant "cherry-picked" the medical record, ignoring evidence of disability.  Finally, Plaintiff argues that a conflict of interest affected Defendant's decision to terminate benefits.

The Court finds that Guardian properly assessed Schwalm's cognitive impairment in a "deliberate" and "principled" fashion.  Certainly, Dr. Harris's 2005 IME found cognitive impairment: "The opioids do interfere with his level of cognition . . . . I am not convinced that he can make the appropriate decisions that need to be made at the level of CEO."  (AR 709.)  However, Dr. Harris's conclusion is a snapshot of Schwalm's condition on May 17, 2005.  The medical records of Dr. Covington, Plaintiff's primary treating physician between 2005 and 2007, do not indicate that cognitive impairment rendered Plaintiff unable to work.  As Plaintiff acknowledges, "Dr. Covington did not opine with regard to side effects and medications."  (Pl.'s Br. in Opp'n to Def.'s Mot. for J. 16.)  Although the Court is sympathetic to Plaintiff's argument that Dr. Covington's role was only to comment on provided records, Dr. Covington did consider Plaintiff's cognitive side effects.  In an April 18, 2007 letter to Guardian, Dr. Covington took into account Plaintiff's pain before agreeing that Plaintiff was fit to function at the light level of physical capacity.  (AR 1936.)  Plaintiff's medications were painstakingly catalogued in Dr. Covington's office visit notes.  (AR 1289-1319.)

Furthermore, Guardian found no objective evidence of cognitive impairment.  According

8

to the Administrative Record, Schwalm was logging significant hours at Peritus. (AR 1289-1319.) Other than reporting difficulties with "mental sharpness" and "concentration," Schwalm repeatedly denied problems with cognition. (AR 142-72.) Schwalm was also not impaired from driving. (AR 1722.) As a result, it was not irrational for Guardian to conclude that Schwalm could perform the major duties of his own occupation despite pain and side effects from medication.

Plaintiff next argues that Guardian "cherry-picked" the medical record, ignoring evidence of disability. Specifically, Plaintiff asserts that Guardian failed to consider the findings of Dr. Harris, Ms. Reis, and Dr. Mekhail.

There is a reasoned explanation for Guardian to place greater weight on Dr. Covington's records than those of Dr. Harris. Dr. Harris conducted an IME on May 17, 2005 that found Schwalm disabled. As a result, Guardian continued making disability payments for more than two years following Dr. Harris's evaluation. Guardian's decision to terminate benefits on September 11, 2007 relied heavily on Dr. Covington's office visit notes and assessment of the FCE.

A plan administrator's choice to rely on the medical opinion of one doctor over another is not arbitrary and capricious if "it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). The May 17, 2005 IME was the only time Schwalm visited Dr. Harris. Dr. Covington not only evaluated Schwalm more recently, but also served as Schwalm's treating physician for over two years. It is also worth noting that Dr. Harris stated Schwalm could "easily work at a sedentary level doing some type of management job." (AR 689.)

9

Likewise, a reasoned explanation exists for placing more weight on Dr. Covington's records than those of Dr. Mekhail.  Dr. Mekhail similarly only saw Schwalm once.  The evaluation occurred more than four months after Guardian discontinued disability payments.  Dr. Mekhail confirmed Plaintiff's condition and recommended possible procedures.  Dr. Mekhail did not indicate that Plaintiff's condition rendered him unable to perform the major functions of his occupation.

Plaintiff argues that Defendant "did not consider or place any emphasis on" the vocational assessment prepared by Ms. Reis of Allwork, Inc.  The Administrative Record does not support this argument.  Guardian's "Appeal Decision Summary" affords the Allwork vocational assessment the following consideration:

> On March 13, 2008 Mr. Schwalm had a vocational assessment that was conducted at Allwork, Inc. by Kathleen L. Reis, C.R.C. In conclusion, it is noted that Mr. Schwalm's position [at Peritus] was not competitive employment and is being performed under special circumstances with a very high level of employer accommodation.  Ms. Reis' statement that Mr. Schwalm lost his ability to earn a living is not supported by the medical information we have on file.

(AR 2020.)  The Allwork vocation assessment acknowledged that "[t]he physical capacities measured by the FCE are more than sufficient to perform the physical demands of the job of Chief Executive Officer."  (AR 1111.)  Ms. Reis concluded that Schwalm's cognitive impairment rendered him disabled.  The Court finds that Guardian gave due consideration to Ms. Reis's conclusions regarding cognitive impairment.  It was not arbitrary and capricious to place more weight on the opinion of Schwalm's treating physician than the opinion of a non-medical expert hired by Plaintiff after benefits were discontinued.

Finally, the Court notes the conflict of interest issue raised by Plaintiff.  The Court is

mindful of the inherent conflict that arises where a single entity both determines eligibility and pays claims. The Supreme Court has made clear that a potential conflict of interest is one factor among many a reviewing court must consider. *Glenn*, 128 S. Ct. at 2351. A conflict is given more weight only "where circumstances suggest a higher likelihood that it affected the benefits decision." *Id.* Here, there is no evidence to suggest that the conflict improperly influenced Guardian's decision process.

Defendant's decision to terminate benefits resulted from a deliberate, principled reasoning process. Given the medical evidence and the Policy's definition of disability, Defendant rationally concluded that Plaintiff could perform the major duties of his own occupation. The Court finds that Guardian did not act arbitrarily and capriciously in discontinuing LTD benefits.

### III. CONCLUSION

For the foregoing reasons, Schwalm's Motion for Judgment on the Administrative Record is denied and Guardian's Motion for Judgment on the Administrative Record is granted. Each party to bear its own costs.

**IT IS SO ORDERED.**


**Date: September 4, 2009**        *S/Christopher A. Boyko*
                                   **CHRISTOPHER A. BOYKO**
                                   **UNITED STATES DISTRICT JUDGE**